**UNITED STATES of America, Plaintiff–Appellee,**

v.

**George W. McCRARY, Defendant–Appellant.**

No. 88–5698.

United States Court of Appeals, Fourth Circuit.

Argued July 14, 1989.

Decided Oct. 16, 1989.

Benjamin Thomas Reed (Gustin, Reed & Martin, Norfolk, Va., on brief), for defendant-appellant.

Robert William Wiechering, Asst. U.S. Atty. (Henry E. Hudson, U.S. Atty., Alexandria, Va., on brief), for plaintiff-appellee.

Before ERVIN, Chief Judge, and PHILLIPS and WILKINSON, Circuit Judges.

PER CURIAM:

George W. McCrary appeals the sentence imposed by the district court after he entered a plea of guilty on one count of conspiracy to possess and distribute a controlled substance, in violation of 21 U.S.C. § 846. We vacate the sentence and remand for limited further proceedings.

## I

The pertinent facts are these. Sometime in August of 1988, drug interdiction agents of the United States Customs Service initiated a "sting" operation designed to lure Fidel Escamilla (Fidel), a major cocaine distributor, to Virginia Beach, Virginia, where the agents planned an undercover drug transaction that would presumably result

in Fidel's arrest. Customs agents secured the cooperation of Guy Malbon, who had recently been convicted of several drug offenses and who apparently had conducted business with Fidel over the course of several years. At the government's behest, Malbon contacted Fidel, who agreed to send his nephew, Cosme Escamilla (Cosme), and one other of his "boys," James Slaton, to Virginia Beach. Fidel promised Malbon that Cosme and Slaton would deliver at least two kilograms of cocaine, in return for $90,000.

Fidel ultimately met with Cosme and Slaton in Tennessee, where he described for them the agreed upon terms of the planned delivery to Malbon. For reasons that remain unclear on the face of the record, the defendant was present at this meeting. It appears, however, that he did not participate in the immediate discussions among Fidel, Cosme and Slaton. Sometime shortly after the meeting, Slaton advised McCrary that he could make three hundred dollars by driving Cosme and Slaton to Virginia Beach, staying overnight and returning the following day.

On August 21, 1988, Cosme, Slaton and McCrary set out for Virginia Beach. McCrary drove most of the way. When the group arrived, Slaton called Malbon to work out the details of the planned transfer. Malbon asked Slaton to meet one of Malbon's associates—who proved to be an undercover agent—at a local convenience store, and to deliver the cocaine to him. Slaton was then to return to the same store the next day to pick up the $90,000 payment. Slaton, Cosme and McCrary complied with these instructions, but were arrested on the second day en route to the drop point.

The multiple count indictment ultimately returned by the grand jury charged the defendant with unlawful distribution of a controlled substance, in violation of 21 U.S.C. § 841; interstate travel to facilitate the distribution of a controlled substance, in violation of 18 U.S.C. § 1952; and conspiracy to possess and distribute a controlled substance, in violation of 21 U.S.C. § 846. McCrary agreed to cooperate with the government and pleaded guilty to the last of these three charges, in return for which the prosecution dismissed the remaining counts of the indictment.

Because the defendant committed the offense after November 1, 1987, the district court imposed sentence under the Guidelines. *See* Sentencing Reform Act of 1984, Pub.L. No. 98–473, § 235, 98 Stat.1988, 2031 (1984) (as amended) (savings clause/effective date), *reprinted at* 18 U.S. C.A. § 3551 (West 1985 & Supp.1989). On the basis of a presentence report prepared by the United States Probation Office, the court determined that the defendant's "base offense level" was 28, *see* Drug Quantity Table, Guidelines § 2D1.1; that McCrary was entitled to a two-level downward adjustment for "acceptance of responsibility," Guidelines § 3E1.1; and that various prior convictions placed the defendant in "Criminal History Category II." *See id.* § 4A1.1. Utilizing the sentencing table found in Chapter 5, Part A of the Guidelines, the court then determined that the applicable "guideline range" for the imposition of a prison term was 70–87 months. The court ultimately sentenced the defendant to seventy months in prison, and this appeal followed.

## II

McCrary argues that the district court erred in three ways: first, by refusing to grant his request for an additional downward adjustment in his base offense level under the Guidelines' provisions for mitigation of the sentences of "minimal" or "minor" participants in "concerted" criminal activity, *id.* § 3B1.2; second, by refusing to grant his separate request for a "downward departure" from the applicable guidelines sentencing range to reflect a purported showing that the defendant acted under coercion or duress, *id.* § 5K2.12; and third, by classifying him in Criminal History Category II, when his criminal record suggested that Category I was applicable. Having considered carefully each of these claims, we find that only the third is meritorious.

## A

At least where it appears that the district court needed to do no more than resolve disputed questions of fact, we review its refusal to grant downward adjustments pursuant to the "Mitigating Role" provision of the Guidelines, *id.* § 3B1.2, under the clearly erroneous standard. *United States v. Daughtrey*, 874 F.2d 213, 217 (4th Cir.1989). *See also* 18 U.S.C. § 3742(e).[1] Here, we think the most McCrary can show is that the record admitted of more than one conclusion on the matter; and under the applicable standard of review, we therefore must reject his challenge to the district court's refusal to find him a minimal or minor participant.

At the original sentencing hearing in this case, the defendant introduced evidence tending to show that his role in the alleged drug-running scheme was not as significant as those of his co-conspirators. It appears, for example, that McCrary never had the cocaine on his person, and that he did not actually transfer the drugs to the undercover agent. As the government points out, however, there was substantial contrary evidence that McCrary still played an important part in the conspiracy. He drove almost the entire way from Tennessee to Virginia, was aware of the nature of the planned drug transaction[2] and was present at the convenience store when Slaton handed over the cocaine. We of course recognize that a downward adjustment for "minimal participation" may be appropriate "where an individual was recruited as a courier for a single ... transaction involving a small amount of drugs." Guidelines § 3B1.2, Application Note 2. The evidence here suggested, however, that McCrary had participated in a number of prior deliveries. The quantity of drugs involved in the Virginia Beach transaction was, moreover, hardly insubstantial. The district court's refusal to make a downward adjustment on this basis was not error.

## B

A different standard of review applies where the defendant challenges a district court's decision to grant or deny a requested downward departure from an otherwise applicable guidelines sentencing range. Here we review to determine whether it was "reasonable" for the district court to conclude that McCrary did not act under "coercion" or "duress," and that he therefore was not eligible for a downward departure under Guidelines § 5K2.12. *See* 18 U.S.C. § 3742(e)(3). This "reasonableness standard" is not to be applied, however, as though it represents a "fixed point within the scope-of-review spectrum." *Daughtrey*, 874 F.2d at 218. "[R]ather, it ... is a sliding scale, with the appropriate point depending on the particular aspect of the departure decision issue being reviewed." *Id.*

This means that where, as here, a departure decision is challenged essentially on factual grounds, the "reasonableness" standard of § 3742(e)(3) necessarily takes on the quality of the "clearly erroneous" standard, requiring comparable deference to the district court's decision. Reviewing the district court's refusal to find coercion justifying departure under this standard, we find no error.

McCrary sought to persuade the district court that had he refused to participate in the Virginia Beach transaction, he would have suffered the wrath of his co-conspirators. But his proffered evidence clearly did not compel such a determination. "Ordinarily coercion will be sufficiently serious to warrant departure only when it involves a threat of physical injury, substantial damage to property[,] or similar

---

1. Section 3742(e) provides, in relevant part, that when an appeal is taken from a sentence imposed under the Guidelines, "[t]he court of appeals shall give due regard to the opportunity of the district court to judge the credibility of witnesses, and shall accept the findings of fact of the district court unless they are clearly erroneous and shall give due deference to the district court's application of the guidelines to the facts."

2. *Cf.* Guidelines § 3B1.2, Application Note 1 ("[T]he defendant's lack of knowledge or understanding of the scope and structure of the enterprise and of the activities of others is indicative of a role as minimal participant.").

injury resulting from the unlawful conduct of a third party...." Guidelines § 5K2.12. Here, McCrary points to no evidence whatsoever that his co-conspirators voiced threats of this magnitude; and the district court was therefore entitled to reject the defendant's claim that he acted solely under duress.

### C

We turn finally to McCrary's claim that he is entitled to resentencing because the district court erred in determining his "criminal history category."

■ The parties agree that the presentence report upon which the district court relied in setting McCrary's criminal history category was tainted by a technical error that the court failed to correct. For the purpose of determining McCrary's criminal history category under Guidelines § 4A1.1, the Probation Office counted as a "sentence of imprisonment" a *suspended* sentence the defendant received some nine years before in connection with an assault conviction. This was improper because, as the government concedes, "[t]o qualify as a sentence of imprisonment, the defendant must have *actually served* a period of imprisonment." *Id.* § 4A1.2, Application Note 2 (emphasis supplied).

From the defendant's perspective, the error was significant. Had the Probation Office not counted the sentence imposed in connection with the assault conviction, it would have placed McCrary in Criminal History Category I, rather than Category II. All other things being equal, this would in turn have yielded an applicable guidelines sentencing range of 63–78 months, rather than the 70–87 month range which the district court ultimately applied. McCrary of course seeks a remand for resentencing, arguing that the district court should have a new opportunity to sentence him—as it did initially—at the "low end" of the "appropriate" guidelines range.

■ The government responds that the technical error here was harmless, inasmuch as the alternative sentencing ranges overlapped and the sentence actually imposed fell within both ranges. We have no doubt that, in many such cases, an appellate court should hesitate before ordering resentencing. It will often appear on the face of a given record, for example, that "the sentence imposed would have been selected under *either* guideline range"—in which case "a dispute as to which of two overlapping ... ranges is applicable need not be resolved." *United States v. Bermingham*, 855 F.2d 925, 934 (2d Cir.1988). That sensible rule presupposes, however, that the district court appreciated the possibility that an alternative, "overlapping" guideline range might apply. For reasons earlier indicated, the sentencing court here did not know that; and we therefore cannot confidently assume that, if apprised of the technical defect in the Probation Office's report, it would nevertheless have imposed the same sentence it did.

The possibility that the court might not have imposed the same sentence is at least suggested by its imposition of a sentence at the "low end" of what it believed to be the applicable sentencing range. Of course, the opposite possibility—that the court would have imposed the same sentence in application of the proper guideline—is at least an equal one on the record we review.

Because we cannot confidently resolve the matter on the record before us, we think the proper course is to "remand[ ] for clarification of the [d]istrict [j]udge's intention regarding the appropriateness of [the] sentence [imposed]." *Id.* at 935–36. Now apprised of the error in the presentence report and the applicability of a different guidelines range, the district court may reconsider the sentence imposed, either on the present record or on the basis of further proceedings.

### III

For the foregoing reasons, the district court's sentencing order is vacated and the case remanded for further proceedings consistent with this opinion.

SO ORDERED.