**UNITED STATES of America, Plaintiff–Appellee,**

v.

**Gene UNDERWOOD, Jr., Defendant–Appellant.**

**No. 91–5356.**

United States Court of Appeals, Fourth Circuit.

Argued June 4, 1992.

Decided July 7, 1992.

James Harold Feldman, Jr., Law Offices of Alan Ellis, P.C., Philadelphia, Pa., argued (Peter Goldberger, Alan Ellis, on brief), for defendant-appellant.

Michael M. Fisher, Asst. U.S. Atty., Charleston, West Va., argued (Michael W. Carey, U.S. Atty., on brief), for plaintiff-appellee.

Before SPROUSE and LUTTIG, Circuit Judges, and LEGG, United States District Judge for the District of Maryland, sitting by designation.

## OPINION

PER CURIAM:

Appellant Gene E. Underwood, Jr., pleaded guilty to manufacturing marijuana. He challenges his sentence on a number of grounds. We affirm.

### I.

Underwood grew marijuana in his Beards Fork, West Virginia, home between 1988 and 1990. He was an occasional seller. On March 22, 1990, during a search of Underwood's home pursuant to a warrant, Corporal D.R. Moore of the West Virginia State Police discovered 1,056 marijuana plants at various stages of botanical development; various paraphernalia used in the cultivation of the drug; and $1,024 in cash. The next day, without the benefit of counsel, Underwood entered into a written plea agreement.

On July 12, 1990, pursuant to the plea agreement, Underwood was charged in an information with manufacturing more than 100 marijuana plants. *See* 21 U.S.C. § 841(a)(1). On July 31, 1990, the district court appointed counsel to represent Underwood, and, on September 4, 1990, Underwood pleaded guilty to the manufacturing charge and consented to the forfeiture

of certain real and personal property, *see id.* § 853(a).

Under 21 U.S.C. § 841(b)(1)(B)(vii) and U.S.S.G. § 2D1.1(c), each marijuana plant, for sentencing purposes, is treated as the equivalent of one kilogram of marijuana, as long as the offense involves fifty or more plants (as this one did). At his sentencing hearing, Underwood called a scientific expert, who testified that it was unlikely that Underwood's marijuana plants could produce more than two ounces (or approximately .06 kilograms) of marijuana each. Underwood also called a psychiatric expert, who testified about Underwood's history of mental illness, and opined that Underwood's cultivation and use of marijuana was related to that illness. At the conclusion of the hearing, the district court sentenced Underwood to a 121–month term of imprisonment, a five-year term of supervised release, and a $50 special assessment.

Underwood advances four claims on appeal. None has merit.

## II.

■ The district court declined to depart downward based upon diminished capacity, *see* U.S.S.G. § 5K2.13 (departure may be warranted if defendant "committed a nonviolent offense while suffering from significantly reduced mental capacity not resulting from voluntary use of drugs or other intoxicants"), concluding that any diminished mental capacity was the result of voluntary drug use. Underwood claims that the district court erred in refusing to depart, because there was no evidence in the record that Underwood's diminished capacity was the result of drug use. Underwood concedes that a district court's refusal to depart is ordinarily not reviewable, *see United States v. Bayerle,* 898 F.2d 28 (4th Cir.), *cert. denied,* — U.S. —, 111 S.Ct. 65, 112 L.Ed.2d 39 (1990), but, citing *United States v. McCrary,* 887 F.2d 485 (4th Cir.1989) (*per curiam*), contends that this court "has recognized an exception where that refusal is based on a clearly erroneous finding of fact," Appellant's Br. at 20. The Government argues that the district court's refusal to depart is unreviewable, or, alter-

natively, that the court did not clearly err in finding that any diminished capacity on Underwood's part was attributable to drug use.

We are persuaded by the Government's first argument. In *McCrary,* this court reviewed the factual finding underlying the district court's refusal to depart. That case, however, has been superseded by *Bayerle,* which was decided five months later. In *Bayerle,* which held that a district court's refusal to depart is reviewable only when the district court was under the mistaken impression that it lacked the authority to depart, this court distinguished two previous cases in which it had reviewed a refusal to depart downward. Those cases were distinguished on the ground that the issue of whether a defendant could appeal a refusal to depart "was not directly presented." 898 F.2d at 30 n. *. One of those cases was *McCrary.*

Thus, insofar as *McCrary* stands for the proposition that the factual finding underlying a district court's refusal to depart is subject to review, that case has effectively been overruled by *Bayerle. Bayerle* also makes it clear that the only circumstance in which review is available is when the district court mistakenly believed that it lacked the authority to depart. Because that exception does not apply here, we may not review the district court's refusal to depart.

## III.

■ Underwood continued to use marijuana for approximately five months after entering into his plea agreement in March 1990. The district court declined to adjust Underwood's offense level downward for acceptance of responsibility, *see* U.S.S.G. § 3E1.1(a), concluding that his continued use of marijuana demonstrated that he had not accepted responsibility for his criminal conduct. Underwood advances two alternative arguments in support of his claim that the district court erred in denying the downward adjustment. First, he argues that as a matter of law, the period prior to a defendant's consultation with counsel—in this case, the period prior to July 31,

1990—"must be excluded from consideration in determining whether a defendant has accepted responsibility for his criminal conduct." Appellant's Br. at 22–23. Underwood cites no authority to support this argument. Second, he argues that even if a district court is permitted to consider a defendant's actions prior to obtaining counsel when deciding whether to reduce a sentence for acceptance of responsibility, the district court clearly erred in finding that Underwood had not accepted responsibility for his criminal conduct, because it was his psychological disorders that caused him to use marijuana.

We reject this claim. Application note 1 to section 3E1.1 of the Sentencing Guidelines states that in determining whether a defendant qualifies for an acceptance of responsibility reduction, it is appropriate for a district court to consider whether the defendant has voluntarily terminated or withdrawn from criminal conduct or associations. U.S.S.G. § 3E1.1, comment. (n.1(a)), The "timeliness of the defendant's conduct in manifesting the acceptance of responsibility," *id.* § 3E1.1, comment. (n.1(g)), is also an appropriate consideration. The district court concluded that Underwood did not voluntarily terminate his criminal conduct in a timely manner. We decline to create a *per se* rule that actions undertaken prior to consultation with counsel may not be considered when determining whether there has been a timely acceptance of responsibility. Even assuming that there are circumstances in which the opportunity to consult with an attorney would be a relevant consideration in determining whether to award an acceptance of responsibility reduction—an issue on which we express no view—it cannot seriously be argued that Underwood needed a lawyer to tell him that the use of marijuana is illegal.

Though the criminal process was brought to bear upon Underwood when he entered into a plea agreement in March 1990, and though he was formally charged in July 1990, he did not stop using marijuana until August 1990. This is sufficient to support the district court's decision not to depart downward. *Cf. United States v. Franklin,* 902 F.2d 501, 506 (7th Cir.) (district court did not err in declining to award acceptance of responsibility reduction where defendant continued to deal cocaine "after he was charged but before he pleaded guilty and was sentenced"), *cert. denied,* —— U.S. ——, 111 S.Ct. 274, 112 L.Ed.2d 229 (1990). Underwood's alternative argument—that the district court clearly erred in not accepting his contention that his psychological disorder caused him to use marijuana—is likewise meritless.

## IV.

Underwood next claims that the requirement that each marijuana plant be treated as the equivalent of a kilogram of marijuana for sentencing purposes, *see* 21 U.S.C. § 841(b)(1)(B)(vii); U.S.S.G. § 2D1.1(c), violates his due process rights. Underwood's expert testified that under ideal conditions, a marijuana plant could produce a kilogram of marijuana; that an average marijuana plant produces about a quarter of a kilogram; and that Underwood's marijuana plants would probably have produced about a twentieth of a kilogram. Underwood concedes that the statute and Guideline provision must be reviewed under a rational basis standard; his argument is that there is no rational basis for equating a marijuana plant with a kilogram of marijuana, because an average marijuana plant yields less than that amount.

All six courts of appeals that have confronted the issue have rejected a constitutional challenge to the one plant/one kilogram equivalence. *See United States v. Holmes,* 961 F.2d 599 (6th Cir.1992); *United States v. Webb,* 945 F.2d 967 (7th Cir. 1991), *cert. denied,* —— U.S. ——, 112 S.Ct. 1228, 117 L.Ed.2d 463 (1992); *United States v. Smith,* 961 F.2d 1389 (8th Cir. 1992); *United States v. Belden,* 957 F.2d 671 (9th Cir.1992); *United States v. Lee,* 957 F.2d 778 (10th Cir.1992); *United States v. Osburn,* 955 F.2d 1500 (11th Cir.1992). These courts have concluded that Congress, in order to further its objective that growers be punished more severely than mere distributors, could rationally create an irrebuttable presumption that each mar-

ijuana plant be treated as the equivalent of a kilogram of marijuana, even though an average plant might produce less than that amount. We agree with this conclusion, and align ourselves with those courts that have upheld the one plant/one kilogram equivalence.

### V.

 Underwood's final claim is that he was denied effective assistance of counsel at sentencing, because his lawyer failed to move for a downward departure based upon (1) the fact that the Sentencing Guidelines provide for a ten-year minimum sentence for those in Underwood's position, while the Government promised him a minimum sentence of five years in the plea agreement; (2) the fact that the Sentencing Guidelines require that each marijuana plant be treated as the equivalent of one kilogram of marijuana, even though his plants would have produced less than that amount; (3) the fact that Underwood was not a major distributor; and (4) the "unusual" reason for his cultivation of the plants—namely, "to develop a strain of marijuana optimally suited to self-medicate his hypertension, anxiety, and other psychological disorders," Appellant's Br. at 13. Underwood contends that these factors constitute "mitigating circumstance[s] of a kind ... not adequately taken into consideration by the Sentencing Commission," 18 U.S.C. § 3553(b), and that his lawyer's failure to request a departure based upon them, *see* U.S.S.G. § 5K2.0, rendered her assistance ineffective under *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).

"We ordinarily require claims of ineffective assistance to be first presented in the District Court in 28 U.S.C. § 2255 proceedings." *United States v. Grandison*, 783 F.2d 1152, 1156 (4th Cir.), *cert. denied*, 479 U.S. 845, 107 S.Ct. 160, 93 L.Ed.2d 99 (1986). However, "[w]hen the record supports [an ineffective assistance claim], we may confront the issue on direct appeal." *United States v. Tatum*, 943 F.2d 370, 380 (4th Cir.1991). This is not such a case, and

we therefore reject Underwood's ineffective assistance claim without prejudice.

### CONCLUSION

For the reasons stated, Underwood's sentence is affirmed.

AFFIRMED.