30 F.3d 131
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Robert Lamar CREWS, Defendant-Appellant.
 No. 93-5890.
 United States Court of Appeals, Fourth Circuit.
 Argued: June 6, 1994.
Decided: Aug. 1, 1994.
 
 Appeal from the United States District Court for the Middle District of North Carolina, at Greensboro. William L. Osteen, Sr., District Judge. (CR-93-132)
 ARGUED: Gregory Davis, Assistant Federal Public Defender, Greensboro, NC, for Appellant.
 Douglas Cannon, Assistant United States Attorney, Greensboro, NC, for Appellee.
 ON BRIEF: William E. Martin, Federal Public Defender, Greensboro, NC, for Appellant.
 Benjamin H. White, Jr., United States Attorney, Greensboro, NC, for Appellee.
 M.D.N.C.
 AFFIRMED IN PART AND DISMISSED IN PART.
 Before HAMILTON and MICHAEL, Circuit Judges, and PHILLIPS, Senior Circuit Judge.
 OPINION
 PER CURIAM:
 
 
 1
 Robert Lamar Crews appeals his conviction and sentence for possession with intent to distribute approximately 850 grams of cocaine hydrochloride, 21 U.S.C. Secs. 841(a)(1) and (b)(1)(B). For the reasons stated herein, we affirm in part and dismiss in part.
 
 
 2
 * On June 22, 1993, a drug interdiction unit consisting of federal, state, and local law enforcement officers was present at the Amtrack Train Station in Greensboro, North Carolina, awaiting the arrival of an evening train from New York City. On this date, the City of Greensboro was in the midst of a heat wave, experiencing high temperatures. The officers of the drug interdiction unit were dressed casually, in blue jeans and shorts, sneakers, and short-sleeved shirts and tee-shirts. Among the passengers who disembarked from the train arriving from New York City were Crews and his girlfriend, Naisha Baidy.
 
 
 3
 Detective Daniel Kaplan of the High Point Police Department approached Crews and Baidy and identified himself as a police officer. Kaplan's attention was drawn to Crews because of what Crews was wearing--a long-legged and long-sleeved jogging suit, beneath which Crews had on a vest, sometimes referred to as a photographer's jacket, with multiple pockets. As Detective Kaplan described it, Crews' attire stood out because he was wearing heavy clothing on such a hot day and other passengers were not dressed in similar clothing.
 
 
 4
 Detective Kaplan asked Crews from where he was coming. Crews indicated that he was travelling from New York. Detective Kaplan then asked Crews if he could see his train ticket, and Crews responded that he did not have his train ticket with him. Detective Kaplan then informed Crews that he was conducting a routine check for narcotics and asked him if he was carrying any drugs. Crews responded that he was not. Detective Kaplan then asked Crews for permission to search his luggage and Crews gave consent. Detective Kaplan proceeded to search Crews' luggage.
 
 
 5
 During Detective Kaplan's search of Crews' luggage, Detective Berkley Blanks of the Greensboro Police Department approached to assist Detective Kaplan. At that point, Detective Blanks engaged Crews in conversation, generally about, among other things, baseball. Shortly thereafter, Detective Blanks asked Crews if he could search his body. Crews said nothing in return, but raised his hands to one side, in a manner and presentation as if he was opening up his arms. Detective Blanks began his search, and found, as a result of that search, several packages of cocaine hydrochloride.
 
 
 6
 On June 28, 1993, a federal grand jury sitting in the middle district of North Carolina returned a one-count indictment charging Crews with possession with intent to distribute approximately 850 grams of cocaine hydrochloride, 21 U.S.C. Secs. 841(a)(1) and (b)(1)(B). On July 15, 1993, Crews moved to suppress the cocaine hydrochloride recovered during the June 22, 1993, search. On August 2, 1993, the district court heard and denied Crews' motion to suppress. After a jury trial, Crews was convicted. On October 28, 1993, the district court sentenced Crews to a term of imprisonment of sixty-three months.
 
 
 7
 Crews appeals.
 
 II
 
 8
 All warrantless searches "are per se unreasonable under the Fourth Amendment--subject only to a few specifically established and well-delineated exceptions." Mincey v. Arizona, 437 U.S. 385, 390 (1978) (quoting Katz v. United States, 389 U.S. 347, 357 (1967) (footnotes omitted)).* One such exception is a search pursuant to an individual's voluntary consent. Schneckloth v. Bustamonte, 412 U.S. 218, 219, 228 (1973). Whether an individual's consent was voluntary, or the product of duress or coercion, is a question of fact to be determined from an assessment of the totality of the circumstances. United States v. Mendenhall, 446 U.S. 544, 577 (1980); Schneckloth, 412 U.S. at 227.
 
 
 9
 The outcome of the voluntariness of Crews' consent is controlled by our decision in United States v. Wilson, 895 F.2d 168 (4th Cir.1990). Wilson involved an airport interdiction and encounter wherein Wilson did not orally respond but rather shrugged his shoulders and raised his arms in response to an agent's request for permission to pat him down, a request made without threats, force, or physical intimidation. Id. at 170. Under such circumstances, we held that the defendant's actions constituted a voluntary consent to allow the pat-down of his person. Wilson is on all fours with this case. Following that precedent, in the absence of evidence of threats, force, or physical intimidation, Crews' raising his arms constituted a voluntary consent to search his person. Accordingly, the district court properly denied Crews' motion to suppress.
 
 III
 
 10
 Crews argues that the district court erred in not granting him a downward departure on the theory that his conduct in transporting the cocaine hydrochloride to Greensboro, North Carolina, was aberrant for him. The district court recognized that it had the authority to depart based on a theory of aberrant conduct but concluded that there was:
 
 
 11
 too much planning and continued activity in connection with this, to say that it is a single thoughtless act of aberrant behavior. Because, as I have said, there is too much planning; there is too much in addition to a single act that causes the court to say it will not accept the request for moving out and downward in the guidelines.
 
 
 12
 (J.A. 243-44).
 
 
 13
 It is well-settled that the denial of a request for a downward departure is not reviewable on appeal unless the district court misperceived its power to depart. See, e.g., United States v. Underwood, 970 F.2d 1336, 1338 (4th Cir.1992). As we noted in Underwood:
 
 
 14
 [T]he only circumstance in which review is available is when the district court mistakenly believed that it lacked the authority to depart. Because that exception does not apply here, we may not review the district court's refusal to depart.
 
 
 15
 Id. (relying on United States v. Bayerle, 898 F.2d 28 (4th Cir.), cert. denied, 498 U.S. 819 (1990)).
 
 
 16
 In this case, because the district court recognized it had the authority to depart downward, but declined to exercise its authority to do so, the refusal of the district court to depart downward is not reviewable on appeal. Bayerle, 898 F.2d at 30-31. Therefore, the component of Crews' appeal attacking his sentence must be dismissed.
 
 IV
 
 17
 Crews raises two other arguments which he contends should be resolved in his favor. His first argument is that there was insufficient evidence to support his conviction. The second is that the district court erred in giving a deliberate ignorance instruction. We find no merit to these contentions. Accordingly, the judgment of conviction is affirmed, and Crews' challenge to his sentence is dismissed.
 
 
 
 *
 The Fourth Amendment of the Constitution provides in part:
 The right of the people to be secure in their persons, houses, papers, and effects against all unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause....