48 F.3d 1218
NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
 UNITED STATES of America, Plaintiff-Appellee,
v.
J.B. TENNANT, Defendant-Appellant.
 No. 94-5614.
 United States Court of Appeals, Fourth Circuit.
 Argued Feb. 2, 1995.
Decided March 6, 1995.
 
 ARGUED: Brent E. Beveridge, Fairmont, WV, for Appellant. Paul Thomas Camilletti, Assistant United States Attorney, Wheeling, WV, for Appellee. ON BRIEF: William D. Wilmoth, United States Attorney, Wheeling, WV, for Appellee.
 Before WIDENER and HAMILTON, Circuit Judges, and CHAPMAN, Senior Circuit Judge.
 OPINION
 PER CURIAM:
 
 
 1
 In this appeal, appellant, J.B. Tennant (Tennant), attacks his sentence on two grounds; he contends that: (1) the district court erred when it attributed to him for sentencing purposes fifteen kilograms of marijuana, and (2) the district court erred when it refused to depart downward from his guidelines sentence. For reasons that follow, we affirm Tennant's sentence and dismiss the component of Tennant's appeal attacking the district court's refusal to depart downward.
 
 
 2
 * In the Spring of 1991, Louis Perez (Perez), an inmate at Keen Mountain Correctional Center (Keen Mountain) approached Tennant, a correctional officer at Keen Mountain, and inquired whether he was interested in receiving shipments of marijuana. In early 1992, Tennant made arrangements with Perez to receive marijuana from Dallas, Texas. It was later learned that Perez's wife was responsible for mailing the shipments of marijuana from Dallas.
 
 
 3
 Tennant arranged for the shipments of marijuana to be mailed to his long-time friend, Stephen Croteau (Croteau). Croteau made arrangements with a friend of his, Jason DeFrance (DeFrance), to assist in the distribution of these shipments. Elliott Hyman (Hyman), a friend of Croteau's, agreed to have two shipments mailed to his residence.
 
 
 4
 Between January 1992 and June 1992, seven Express Mail packages containing a total of approximately thirty-eight kilograms of marijuana were mailed from Dallas to West Virginia.
 
 
 5
 On June 9, 1992, postal inspectors intercepted an Express Mail package at the Pittsburgh International Airport. The package was searched pursuant to a search warrant, and the inspectors discovered that the package contained approximately fifteen pounds of marijuana (approximately 6.8 kilograms). The package was addressed to Hyman, and the return address reflected a Dallas address.
 
 
 6
 Later that day, a postal inspector, dressed as a mail carrier, conducted a controlled delivery of the package to Hyman. Surveillance was established on Hyman's residence, and, approximately one hour later, Croteau arrived at Hyman's residence. A short time later, an electronic alerting device inside the package activated indicating the package was opened. At that point, an entry of Hyman's residence was performed, and Croteau and Hyman were arrested.
 
 
 7
 On June 10, 1992, Croteau and his attorney met with Drug Task Force agents. During this meeting, Croteau revealed information regarding his criminal activity as well as the activity of Tennant. More specifically, Croteau divulged information about three prior Express Mail shipments (other than the fifteen pound intercepted package). Croteau also informed the agents that two of those packages contained three to five pounds of marijuana and the third contained ten pounds. Croteau also divulged that, prior to the first Express Mail shipment, he had received one ounce of marijuana on two occasions and one pound of marijuana on another occasion from Tennant. Croteau further informed the agents that DeFrance was a regular customer of his and that DeFrance was to receive five pounds of the intercepted shipment. At this meeting, Croteau did not disclose any information about three other Express Mail packages that he had received from Dallas through Tennant because he did not want to get innocent third parties involved.[1]
 
 
 8
 Arrangements were then made for Croteau to deliver three pounds of marijuana to DeFrance later that day. At the conclusion of that transaction, DeFrance was arrested. That evening, DeFrance met with Drug Task Force agents. At that meeting, DeFrance told the agents that Tennant was Croteau's source of marijuana and that Tennant would either mail the marijuana to Croteau or they would meet at a predetermined location where a hand-to-hand exchange would occur.
 
 
 9
 DeFrance described one occasion on which Croteau tendered payment to Tennant for one pound of marijuana previously received and received an additional pound of marijuana.
 
 
 10
 On June 19, 1992, arrangements were made for Croteau to meet with Tennant in order for Croteau to make partial payment for the fifteen-pound marijuana shipment that was intercepted on June 9, 1992. At the conclusion of this transaction, Tennant was placed under arrest and, at that time, immediately agreed to cooperate. Tennant gave the Drug Task Force agents information concerning his own activities as well as information concerning Perez.
 
 
 11
 Tennant agreed to be monitored and wore a recording device into Keen Mountain in an attempt to record Perez in conversation with Tennant discussing the details of the marijuana conspiracy. Tennant also conducted monitored telephone conversations with Perez. As a result of this investigation and Tennant's cooperation with the government, Perez and his wife were indicted and pleaded guilty to their involvement in the drug conspiracy.
 
 
 12
 In July 1992, Tennant entered into a plea agreement with the government wherein he agreed to plead guilty to his involvement in the marijuana conspiracy, and the government agreed to stipulate that the total relevant conduct of Tennant was limited to 6.8 kilograms of marijuana. Notably, the plea agreement provided that the government would recommend that Tennant receive a reduction for acceptance of responsibility, and recommend a sentence of incarceration at the lower end of the applicable guideline range. The plea agreement also provided that the district court would not be bound by the stipulation of 6.8 kilograms and was not required to accept it. The plea agreement also indicated that the district court was not bound by the sentencing recommendations of the government and that Tennant would have no right to withdraw his guilty plea if the district court did not follow the sentencing recommendations set forth in the plea agreement.
 
 
 13
 On March 1, 1994, a one count information was filed in the United States District Court for the Northern District of West Virginia charging Tennant with conspiracy to distribute marijuana. See 21 U.S.C. Secs. 841 and 846. Tennant entered a guilty plea on the same day as the filing of the information.
 
 
 14
 The presentence report (PSR) prepared in anticipation of Tennant's sentencing, concluded, contrary to the stipulation of 6.8 kilograms contained in the plea agreement, that Tennant's total relevant conduct involved fifteen kilograms of marijuana.[2] Both Tennant and the government objected to the PSR's finding that Tennant was accountable for fifteen kilograms of marijuana and both asserted that Tennant was accountable for only 6.8 kilograms.
 
 
 15
 Prior to sentencing, the government filed a motion for a four-level downward departure based upon Tennant's substantial assistance pursuant to United States Sentencing Commission, Guidelines Manual, Sec. 5K1.1. At sentencing, the district court overruled objections to the PSR, and adopted the findings of the PSR. The district court also denied the government's motion seeking a four-level downward departure based upon Tennant's substantial assistance. Tennant was sentenced to eighteen months' imprisonment. He noted a timely appeal.
 
 II
 
 16
 Wrapped in the cloak of a separation of powers argument, Tennant makes several arguments in support of his contention that the district court should have attributed to him, for sentencing purposes, only 6.8 kilograms of marijuana. We find no merit to these arguments.
 
 
 17
 Initially, we must reject Tennant's suggestion that the district court was bound by the stipulation of 6.8 kilograms contained in Tennant's plea agreement. Section 6B1.4 of the guidelines provides that "[t]he court is not bound by the stipulation, but may with the aid of the presentence report, determine the facts relevant to sentencing." The commentary to this guideline provides:
 
 
 18
 Section 6B1.4(d) makes clear that the court is not obliged to accept the stipulation of the parties. Even though stipulations are expected to be accurate and complete, the court cannot rely exclusively upon stipulations in ascertaining the factors relevant to the determination of sentence. Rather, in determining the factual basis for the sentence, the court will consider the stipulation together with the results of the presentence report, and any other relevant information.
 
 
 19
 Accordingly, the district court was not bound by the stipulation of 6.8 kilograms contained in the plea agreement in sentencing Tennant.
 
 
 20
 We also find no merit to Tennant's contention that the district court's actions violated U.S.S.G. Sec. 1B1.8 of the guidelines. That section provides:
 
 Use of certain information
 
 21
 (a) Where a defendant agrees to cooperate with the government by providing information concerning unlawful activities of others, and as part of that cooperation agreement the government agrees that self-incriminating information provided pursuant to the agreement will not be used against the defendant, then such information shall not be used in determining the applicable guideline range, except to the extent provided in the agreement.
 
 
 22
 (b) The provisions of subsection (a) shall not be applied to restrict the use of information:
 
 
 23
 (1) Known to the government prior to entering into the cooperation agreement.
 
 
 24
 Tennant argues that under U.S.S.G. Sec. 1B1.8, the government was precluded from using any information that Tennant provided to the government.[3] This contention has no merit because, prior to Tennant's entry into the plea agreement, the government was aware that Tennant was involved in transactions totalling at least fifteen kilograms of marijuana. Accordingly, the district court was not prohibited by U.S.S.G. Sec. 1B1.8 from attributing fifteen kilograms of marijuana to Tennant.
 
 
 25
 Finally, Tennant argues that Croteau's testimony was unreliable. However, it was up to the district court to determine whether Croteau's statement to Drug Task Force agents on June 10, 1992 was reliable. See U.S.S.G. Sec. 6A1.3(a) (District court can rely on any fact provided it "has sufficient indicia of reliability to support its probable accuracy."). Regardless of whether the parties thought Croteau's statements were unreliable on June 10, 1992, the district court was at liberty to accept them at face value, especially in light of the fact that the district court was able to observe Croteau's testimony during Hyman's trial. Accordingly, Tennant's argument that Croteau's testimony was unreliable has no merit. In sum, the district court did not err in attributing fifteen kilograms of marijuana to Tennant.
 
 III
 
 26
 Tennant also contends that the district court erred when it refused to depart downward from his guidelines sentence. This argument has no merit.
 
 
 27
 In denying the government's motion for a downward departure pursuant to U.S.S.G. Sec. 5K1.1, the district court noted that it may depart from the guidelines as a result of the government's motion, that it had the authority to depart, but chose not to exercise such authority "given the circumstances of this case as considered in their totality." (J.A. 52-53).
 
 
 28
 It is well-settled that the denial of a request for a downward departure is not reviewable on appeal unless the district court misperceived its power to depart. See, e.g., United States v. Underwood, 970 F.2d 1336, 1338 (4th Cir.1992). As we noted in Underwood:
 
 
 29
 [T]he only circumstance in which review is available is when the district court mistakenly believed that it lacked the authority to depart. Because that exception does not apply here, we may not review the district court's refusal to depart.
 
 
 30
 Id. (relying on United States v. Bayerle, 898 F.2d 28 (4th Cir.), cert. denied, 498 U.S. 819 (1990)).
 
 
 31
 At sentencing, the district court clearly expressed recognition of its authority to depart and chose not to exercise that discretion, given all the circumstances of the case. Because the district court recognized it possessed the authority to depart downward, but declined to exercise that authority, the refusal of the district court to depart downward is not reviewable on appeal. Bayerle, 898 F.2d at 30-31. Therefore, the component of Tennant's appeal attacking the district court's refusal to depart downward must be dismissed.
 
 IV
 
 32
 For the reasons stated herein, we affirm Tennant's sentence and dismiss the component of Tennant's appeal attacking the district court's refusal to depart downward.
 
 AFFIRMED IN PART AND DISMISSED IN PART
 
 
 [1]
 It was later determined that these three packages were shipped to individuals who did not know they contained marijuana
 
 
 [2]
 The PSR arrived at fifteen kilograms on the basis of: (1) the intercepted shipment of 6.8 kilograms; (2) the three Express Mail shipments (totalling at least sixteen pounds or 7.2 kilograms) received by Croteau prior to the fifteen pound intercepted shipment; (3) the three transactions (totalling approximately .5 kilograms) between Tennant and Croteau conducted prior to Croteau's receipt of the first Express Mail shipment; and (4) the occasion described by DeFrance in which Croteau tendered payment to Tennant for one pound of marijuana previously received and received an additional pound of marijuana. Because the delivered one pound could have been the same one pound transaction described by Croteau, Tennant was held accountable for only one pound, or approximately .5 kilograms
 
 
 [3]
 Tennant's plea agreement provided:
 It is understood that any information obtained from Mr. Tennant in compliance with the cooperation agreement will be made known to the sentencing court; however, pursuant to Guideline 1B1.8, such information may not be used by the court in determining Mr. Tennant's applicable guideline range.
 (J.A. 4).