**UNPUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

UNITED STATES OF AMERICA,
Plaintiff-Appellee,

v.                                                                                    No. 95-5683

LORI LEE KASPROWSKI,
Defendant-Appellant.

Appeal from the United States District Court
for the Northern District of West Virginia, at Wheeling.
Frederick P. Stamp, Jr., Chief District Judge.
(CR-95-10)

Argued: November 1, 1996

Decided: December 31, 1996

Before NIEMEYER, MICHAEL, and MOTZ, Circuit Judges.

_____

Affirmed by unpublished per curiam opinion.

_____

**COUNSEL**

**ARGUED:** George Alan DuBois, Assistant Federal Public Defender,
Raleigh, North Carolina, for Appellant. Samuel Gerald Nazzaro, Jr.,
Assistant United States Attorney, Wheeling, West Virginia, for
Appellee. **ON BRIEF:** William D. Wilmoth, United States Attorney,
Wheeling, West Virginia, for Appellee.

_____

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

_____

**OPINION**

PER CURIAM:

Lori Lee Kasprowski appeals from the sentence imposed by the district court pursuant to her conviction under 21 U.S.C. §§ 841(a)(1) & 860. Kasprowski contends that the court erred in its determination of her relevant conduct under U.S.S.G. § 1B1.3 and in its refusal to decrease her offense level for acceptance of responsibility under U.S.S.G. § 3E1.1. Finding no error in the district court's determinations, we affirm.

I.

In 1994 Kasprowski lived in a Wheeling, West Virginia, apartment with Raymond Prayear, Sr., her boyfriend. During the summer of 1994 Prayear became the target of an investigation by the Ohio Valley Drug Task Force, a law enforcement team consisting of local, state, and federal agents. This task force sent a confidential informant to Prayear and Kasprowski's apartment on July 26, 1994. The informant was supplied with $260: $60 to pay off a past debt to Prayear and $200 to purchase crack cocaine from Prayear. However, when the informant arrived at the apartment only Kasprowski was at home. Kasprowski agreed to handle the transaction; she accepted the money and gave the informant 1.49 grams of crack cocaine, which she retrieved from a dresser drawer in the bedroom. In a discussion taped by the informant, Kasprowski acknowledged that she was "taking the risk" by conducting the drug sale without Prayear. Additionally, Kasprowski indicated that she counted the money from Prayear's drug transactions and that Prayear had directed her to "take care of business" during his absence.

Kasprowski was not present for the informant's next purchase from Prayear on July 28. However, she was in the apartment when the informant returned on August 1 and bought $200 worth of crack

2

cocaine from Prayear. Although Kasprowski played no active role in the August 1 transaction, she told the informant that she planned to give certain individuals code numbers for use with Prayear's beeper. A final drug transaction took place at the apartment on August 2. The informant, along with an undercover state trooper, purchased 4.65 grams of crack cocaine from Prayear. Kasprowski again was present but did not take part in the sale. The informant was wired for the transactions of August 1 and 2.

On April 18, 1995, Kasprowski was indicted on two counts: conspiracy to possess crack cocaine with the intent to distribute, see 21 U.S.C. § 841(a)(1), and aiding or abetting the distribution of crack cocaine within 1,000 feet of a playground, see 21 U.S.C. §§ 841(a)(1) & 860. Kasprowski entered into a plea agreement with the government on June 6, 1995. According to the agreement, Kasprowski would plead guilty to the aiding or abetting count, and the government would move to dismiss the conspiracy count. The parties also stipulated that the total relevant conduct for Kasprowski would be at least one but not more than two grams of crack cocaine. However, the agreement expressly acknowledged that the court would not be bound by this stipulation.

After Kasprowski's plea, the probation officer prepared a presentence report (PSR). Two matters in the PSR were (and still are) contested by Kasprowski. First, the officer reported that the relevant conduct for Kasprowski's offense should include not only the July 26 sale made by Kasprowski but also the August 1 and 2 sales when she was present. The addition of the August sales changed the underlying amount of crack cocaine from 1.49 grams to 7.72 grams and changed Kasprowski's initial base offense level from 18 to 26.[1] Second, the officer refused to recommend a downward departure for acceptance of responsibility because Kasprowski had violated conditions of her pretrial release. While on release Kasprowski had tested positive for cocaine metabolites, had failed to report to the pretrial services offi-

_____

[1] The probation officer then added an extra two levels, pursuant to U.S.S.G. § 2D1.2(a)(1), because the sale took place within 1,000 feet of a protected area.

3

cer, had failed to report a change of her address, and had left her home district without permission.**2**

Both Kasprowski and the government objected to the PSR's relevant conduct determination, and Kasprowski objected because no adjustment for acceptance of responsibility was recommended. The probation officer responded to the objections in a written report, but he declined to revise the PSR. At the sentencing hearing, Kasprowski presented testimony by Prayear, who claimed that Kasprowski's involvement in his drug-trafficking business was limited to the July 26 transaction. After considering the evidence, including the tapes of the several transactions, the district court confirmed the findings in the PSR as to relevant conduct and the failure to accept responsibility. The court did depart downward four levels (from 28 to 24) because the informant's tape recordings of the August 1 and 2 sales were not made available to Kasprowski until the date of sentencing. The court sentenced Kasprowski to 51 months in prison, and she now appeals her sentence.

## II.

Kasprowski argues that the district court erred by (a) miscalculating her underlying relevant conduct and (b) refusing to depart downward based on her acceptance of responsibility.

## A.

We turn first to the relevant conduct issue. In order to determine the base offense level for a crime involving drug distribution, the sentencing court must determine the quantity of drugs involved. See U.S.S.G. § 2D1.1(c). The court derives the quantity of drugs from the defendant's "relevant conduct." According to U.S.S.G. § 1B1.3(a)(1), relevant conduct includes all acts committed by the defendant, as well as "all reasonably foreseeable acts and omissions of others in furtherance of the jointly undertaken criminal activity." A "jointly undertaken criminal activity" is defined as "a criminal plan, scheme, endeavor, or enterprise undertaken by the defendant in concert with

_____

**2** As a result of these violations, Kasprowski's pretrial release had been revoked and she had been taken into custody.

others, whether or not charged as a conspiracy." U.S.S.G. § 1B1.3(a)(1)(B). The Guidelines Commentary provides this further instruction for crimes involving contraband:

> [T]he defendant is accountable for all quantities of contraband with which he was directly involved and, in the case of a jointly undertaken criminal activity, all reasonably foreseeable quantities of contraband that were within the scope of the criminal activity that he jointly undertook.

Id., comment. n. 2. Factual findings made by the sentencing court regarding relevant conduct are reviewed only for clear error. See United States v. D'Anjou, 16 F.3d 604, 614 (4th Cir. 1994).

Kasprowski does not dispute that her sale of the 1.49 grams to the informant on July 26 constitutes relevant conduct, nor does she argue that the August 1 and 2 transactions were not foreseeable. Kasprowski does contend, however, that the district court clearly erred in finding her to have engaged in a "jointly undertaken criminal activity" with Prayear. According to Kasprowski, the July 26 sale was an atypical, singular incident that began and ended her association with Prayear's drug distribution activities. Kasprowski cites to the testimony of Prayear, who said that the drugs were his alone and that Kasprowski "wasn't part of any conspiracy to sell any drugs." Although she admits to conducting the July 26 transaction, Kasprowski claims that this sale alone is insufficient to create a "jointly undertaken criminal activity." In support of this claim, Kasprowski cites to the following example provided in the application notes for § 1B1.3:

> Defendant O knows about her boyfriend's ongoing drug-trafficking activity, but agrees to participate on only one occasion by making a delivery for him at his request when he was ill. Defendant O is accountable under subsection (a)(1)(A) for the drug quantity involved on that one occasion. Defendant O is not accountable for the other drug sales made by her boyfriend because those sales were not in furtherance of her jointly undertaken criminal activity (i.e., the one delivery).

U.S.S.G. § 1B1.3, comment. n. 2(c)(5).

5

If the evidence was clear that Kasprowski had "agree[d] to participate on only one occasion," her relevant conduct would be limited to the July 26 sale. However, the record reflects that Kasprowski's involvement in Prayear's drug distribution extended beyond that one sale. Tape recordings of the July 26 and August 1 sales demonstrate that Kasprowski was actively involved in Prayear's drug trafficking. During the July 26 sale Kasprowski discussed with the informant how she was "taking the risk" by distributing crack cocaine in Prayear's absence. Kasprowski also claimed that she could make more money selling crack than Prayear, since Prayear would smoke more of the product than Kasprowski would. Kasprowski's boast that "I count the money, I keep it counted" shows direct involvement in the overall distribution scheme, and her acknowledgement that Prayear asked her to "stay [in the apartment] and take care of business" shows that Prayear relied upon her assistance. Kasprowski's comments during the August 1 transaction also reveal her complicity in Prayear's distribution scheme. Kasprowski indicated during that transaction that Prayear possessed a beeper and that she intended to give out code numbers for use with that beeper. The district court noted,"I think that to hold that the discussions about beepers in this case were not directed towards drug trafficking or drug dealing would be just, quite simply, blinking at reality."

These conversations indicate that Kasprowski, at least from July 26 to August 2, jointly undertook with Prayear to distribute 7.72 grams of cocaine base. Accordingly, the district court did not clearly err in its determination "that the probation officer's findings of relevant conduct, not only on July 26, 1994, but on August 1, 1994, and August 2, 1994, are supported by the evidence." The fact that the government and Kasprowski stipulated to relevant conduct of a lesser amount ("at least 1 but less than 2 grams" of crack) does not require a different result, as the plea agreement itself acknowledges. See U.S.S.G. § 6B1.4(d) ("The court is not bound by the stipulation . . . ."); United States v. Williams, 880 F.2d 804, 806 (4th Cir. 1989) ("The sentencing judge is not bound to a particular sentence under the plea agreement . . . ."). Neither is it dispositive that the underlying charge is one of distribution, rather than conspiracy. See U.S.S.G. § 1B1.3(a)(1)(A) (noting that jointly undertaken criminal activity is relevant conduct "whether or not charged as conspiracy"); United States v. Ellis, 975 F.2d 1061, 1067 (4th Cir. 1992) ("[A] district court

6

can, in sentencing, consider quantities of cocaine involved in a conspiracy even when the defendant pled guilty only to possession with intent to distribute and even though the quantity expressed in the count to which he pled guilty was smaller . . . ."), cert. denied, 507 U.S. 945 (1993). In sum, the district court did not err in counting the three transactions as relevant conduct under U.S.S.G. § 1B1.3.

B.

Kasprowski also claims that the district court erroneously failed to grant a downward departure for acceptance of responsibility. Section 3E1.1 of the Sentencing Guidelines provides for a two-level decrease in the offense level if the defendant "clearly demonstrates acceptance of responsibility for his offense." U.S.S.G.§ 3E1.1(a). The commentary for this section lists several factors that may be considered in determining whether a defendant has accepted responsibility. These factors include "truthfully admitting the conduct comprising the offense" as well as "voluntary termination or withdrawal from criminal conduct or associations." U.S.S.G. § 3E1.1, comment. n. 1(a),(b). We have determined that the use of illegal drugs after the defendant has been charged "is sufficient to support [a] . . . decision not to depart downward." United States v. Underwood , 970 F.2d 1336, 1339 (4th Cir. 1992); see also United States v. Scroggins, 880 F.2d 1204, 1216 (11th Cir. 1989) ("We believe that the district court acted well within its discretion in concluding that appellant's continuing use of cocaine cast doubt on the sincerity of his avowed acceptance of responsibility.").

Here, the district court summarized its reasons for declining to depart as follows:

> I think that [Underwood] stands for and the Application Notes stand for the principle that violating the law after a guilty plea and the conviction is an indication, probably a clear one, that the defendant has, unfortunately, not accepted responsibility because possession and use of a controlled substance is a crime and is criminal conduct.

Kasprowski acknowledges that she tested positive for cocaine while on pretrial release. She argues, however, that her positive test is not

dispositive as to the acceptance of responsibility determination. See e.g., Scroggins, 880 F.2d at 1216 ("[A] defendant's continued use of narcotics does not preclude an adjustment for acceptance of responsibility . . . ."). Nevertheless, since Underwood made it clear that a positive drug test is "sufficient" to deny the departure, the district court did not err in refusing to depart downward.[3]

III.

Because the district court did not err in its determinations about Kasprowski's relevant conduct and her failure to accept responsibility, we affirm the sentence.

AFFIRMED

_____

[3] Although the district court only explicitly discussed Kasprowski's positive drug test, Kasprowski also, while on pretrial release, failed to report to the pretrial services officer, failed to report a change of address, and left her home district without permission.

8