**PUBLISHED**

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

UNITED STATES OF AMERICA,
          *Plaintiff-Appellee,*

v.                                   No. 01-4820

ADAM NICKLOUS CARR,
          *Defendant-Appellant.*

Appeal from the United States District Court
for the Middle District of North Carolina, at Durham.
N. Carlton Tilley, Jr., Chief District Judge.
(CR-01-126)

Argued: June 6, 2002

Decided: September 11, 2002

Before MICHAEL and GREGORY, Circuit Judges, and
Robert R. BEEZER, Senior Circuit Judge of the United States
Court of Appeals for the Ninth Circuit, sitting by designation.

Affirmed in part, vacated in part, and remanded by published opinion.
Judge Michael wrote the opinion, in which Judge Gregory and Senior
Judge Beezer joined.

## COUNSEL

**ARGUED:** Eric David Placke, Assistant Federal Public Defender,
Greensboro, North Carolina, for Appellant. Douglas Cannon, Assistant United States Attorney, Greensboro, North Carolina, for Appellee. **ON BRIEF:** Louis C. Allen, III, Federal Public Defender,

Greensboro, North Carolina, for Appellant. Anna Mills Wagoner, United States Attorney, Robert A.J. Lang, Assistant United States Attorney, Greensboro, North Carolina, for Appellee.

---

**OPINION**

MICHAEL, Circuit Judge:

Adam Nicklous Carr was convicted under 18 U.S.C. § 844(i) for intentionally setting fire to an apartment building and causing the death of an occupant. He was sentenced to life in prison. Carr appeals, arguing that his conviction must be reversed because his indictment failed to allege an essential element of the offense, namely, that the building was damaged or destroyed "by means of fire or an explosive." Using the analysis for forfeited error, we affirm Carr's conviction because the indictment defect did not seriously affect the fairness, integrity, or public reputation of judicial proceedings. Carr also appeals his sentence, arguing that the district court erroneously equated his reckless state of mind with knowledge when it denied his request for a downward departure. *See* U.S. Sentencing Guidelines Manual § 2A1.1, cmt. n.1 (2001). We remand for resentencing because we are not sure that the district court properly distinguished between recklessness and knowledge when it refused to depart downward.

I.

In the early morning hours of February 1, 2001, someone set fire to a four-unit brick apartment building at 730 South Beaumont Avenue in Burlington, North Carolina. The fire was set in Apartment 2, a first-floor apartment that was vacant at the time. Firefighters and an arson expert said that the nature and severity of the damage indicated that a flammable liquid had been used to start the fire. The building's three tenants were asleep in their respective apartments when the fire was started. Two of the tenants made it out of the building. The third, Ernest Smithey, Jr., did not. Firefighters discovered Smithey's body on the floor of his second-level apartment. The cause of death was carbon monoxide poisoning from the fire.

About two weeks later, Torrie Rudd, an acquaintance of defendant Carr, came to the police after learning that the Burlington Crimestoppers were offering a reward for information about the identity of the arsonist. Rudd told police that on the day of the fire she talked with Carr at his brother's house. She asked Carr whether he had set the fire and whether he knew that people were inside the apartment building at the time. Carr replied that he "didn't think it would burn like that and he didn't know if anybody was in the [building]." Rudd later wore a wire and recorded conversations with Carr in which Carr made self-incriminating statements, including a boast that his girlfriend would provide a false alibi. When the police interviewed Carr on March 5, 2001, he made oral and written statements, essentially claiming that if he was the cause of the fire, it was an accident. Specifically, Carr claimed that he had gone into an empty apartment and a fire erupted when he tried to light the gas heater. Carr said he beat the fire out with his shirt, urinated on the heater, and left the building. These statements were completely contradicted by the government's evidence, including the evidence about the nature of the fire.

Carr was indicted by a federal grand jury for a violation of 18 U.S.C. § 844(i), which provides:

> Whoever maliciously damages or destroys . . . by means of fire or an explosive, any building, vehicle, or other real or personal property used in interstate or foreign commerce or in any activity affecting interstate or foreign commerce shall be imprisoned for not less than 5 years . . . and if death results to any person . . . as a direct or proximate result of conduct prohibited by this subsection, shall also be subject to imprisonment for any term of years, or to the death penalty or to life imprisonment.

The indictment alleged that Carr "did maliciously damage and destroy and attempt to damage and destroy an apartment building . . . used in interstate commerce . . . which resulted in the death of Ernest Stanton Smith[e]y, Jr., in violation of Title 18, United States Code, Section 844(i)." The indictment failed to allege that Carr had damaged or destroyed the building "by means of fire or an explosive." Carr did not object to the defect in the indictment either before or during trial.

Carr was convicted by a jury. At sentencing he moved for a downward departure under the applicable guideline, U.S.S.G. § 2A1.1, First Degree Murder, application note 1, on the ground that he did not knowingly or intentionally cause the death of the tenant. The district court found that Carr had acted with reckless indifference to the possibility of causing death, which the court equated with knowledge. The court therefore held that Carr was ineligible for a downward departure. Carr was sentenced to life imprisonment plus five years of supervised release. He appeals his conviction, arguing that the indictment's failure to allege an essential element of the offense — "by means of fire or an explosive" — constitutes plain error that we should notice and correct, even though he did not bring this defect to the attention of the district court. Carr also appeals his sentence, arguing that the district court committed legal error by equating reckless indifference with knowledge and that this error led the court to refuse to consider a downward departure under the applicable guideline, U.S.S.G. § 2A1.1, cmt. n.1.

## II.

We first consider whether the indictment's failure to allege an essential element of the offense is an error requiring reversal of Carr's conviction despite his failure to make a timely objection. All agree that the omitted phrase, "by means of fire or an explosive," is an essential element of a § 844(i) offense. *See United States v. Gullett*, 75 F.3d 941, 947 (4th Cir. 1996). Indeed, the omission of the "fire or . . . explosive" language means that the indictment did not charge a federal crime at all.

In his initial brief on appeal, Carr contended that the omission from his indictment of an essential element of the crime was an error that deprived the district court of jurisdiction to hear his case. Accordingly, he argued that his conviction had to be vacated notwithstanding his failure to object. This position had some support in the case law. *See, e.g., Ex parte Bain*, 121 U.S. 1, 13 (1887) (a flawed amendment to the indictment means that "the jurisdiction of the offence [sic] is gone, and the court has no right to proceed any further in the progress of the case for want of an indictment."); *United States v. Hooker*, 841 F.2d 1225, 1232 (4th Cir. 1988) (en banc) ("Because the missing element in the present case was essential, its complete absence from

Count III [of the indictment] is a fatal defect. . . . The court thus had no jurisdiction to try [the defendant] under that count . . . and its judgment must be vacated."). A few days before Carr's appeal was argued, however, the Supreme Court issued its decision in *United States v. Cotton*, ___ U.S. ___, 122 S.Ct. 1781 (2002). In *Cotton* the Court discussed whether an indictment defect, particularly the failure to charge a federal crime, deprives a district court of jurisdiction. The Court said:

> Post-[*Ex parte*]*Bain* cases confirm that defects in an indictment do not deprive a court of its power to adjudicate a case. In *Lamar v. United States*, 240 U.S. 60 (1916), the Court rejected the claim that "the court had no jurisdiction because the indictment does not charge a crime against the United States." *Id.*, at 64. Justice Holmes explained that a district court "has jurisdiction of all crimes cognizable under the authority of the United States . . . [and] [t]he objection that the indictment does not charge a crime against the United States goes only to the merits of the case." *Id.*, at 65. Similarly, *United States v. Williams*, 341 U.S. 58, 66 (1951), held that a ruling "that the indictment is defective does not affect the jurisdiction of the trial court to determine the case presented by the indictment."

> Thus, this Court some time ago departed from *Bain*'s view that indictment defects are "jurisdictional." . . . Insofar as it held that a defective indictment deprives a court of jurisdiction, *Bain* is overruled.

*Cotton*, 122 S.Ct. at 1785 (parallel citations omitted; second alteration in original). This language from *Cotton* prompted Carr's lawyer to concede at oral argument that the defect in the indictment did not deprive the district court of jurisdiction to adjudicate Carr's case.

Because *Cotton* has taken the jurisdictional issue away from us, we will review Carr's forfeited claim about the indictment defect under the plain error test of Federal Rule of Criminal Procedure 52(b). *See Cotton*, 122 S.Ct. at 1785. Under that test, which was spelled out in *United States v. Olano*, 507 U.S. 725, 732-36 (1993), an appellate court may correct an error not brought to the attention of the trial

court if (1) there is an error (2) that is plain and (3) that affects substantial rights. "If all three [of these] conditions are met, an appellate court may then exercise its discretion to notice a forfeited error, but only if (4) the error seriously affect[s] the fairness, integrity, or public reputation of judicial proceedings." *Johnson v. United States*, 520 U.S. 461, 467 (1997) (quoting *Olano*, 507 U.S. at 732) (quotations omitted; second alteration in original).

The government concedes that the defect in Carr's indictment is error and that the error is plain. This brings us to the third inquiry in the plain error (or *Olano*) analysis, that is, whether the error affects substantial rights. We may bypass the inquiry at the third step and assume that Carr's substantial rights are violated if we can determine, at the fourth step, that the error has not seriously affected the fairness, integrity, or public reputation of judicial proceedings. *See Cotton*, 122 S.Ct. at 1786. Because Carr's argument fails at *Olano*'s fourth step, we move directly to that discussion. *See id.*

At oral argument Carr's lawyer emphasized the importance of the Fifth Amendment right to a grand jury to support Carr's claim that the indictment defect seriously affected the fairness, integrity, or public reputation of judicial proceedings. Specifically, the lawyer argued that it is essential to the basic fairness and integrity of the criminal process that the indictment set forth every ingredient of the crime charged. However, in *Cotton* the Supreme Court, citing *Johnson*, rejected essentially the same argument. *Id.* at 1786-87. In *Johnson* the Court held that the judge's failure in a perjury trial to instruct the jury on the essential element of materiality did not seriously affect the fairness, integrity, or public reputation of judicial proceedings. *Johnson*, 520 U.S. at 469-70. This was because "[t]he evidence of materiality . . . was 'overwhelming' and 'essentially uncontroverted.'" *Cotton*, 122 S.Ct. at 1786 (*quoting Johnson*, 520 U.S. at 470). Thus, in *Johnson* the defendant's conviction was upheld because even though the petit jury was not charged on one of the essential elements of perjury, the uncharged element (materiality) was nevertheless established by evidence that was one-sided and overwhelming. Similarly, in *Cotton* the Court reviewed the evidence relating to the element missing from the indictment (the quantity of drugs involved) and concluded that "[t]he evidence that the conspiracy involved at least 50 grams of cocaine base was 'overwhelming' and 'essentially uncontroverted.'"

*Cotton*, 122 S.Ct. at 1786. The Court therefore concluded that "[s]urely the grand jury, having found that the conspiracy existed, would have also found that the conspiracy involved at least 50 grams of cocaine base." *Id.* at 1786. As the Court explained in *Cotton*, if the defect in the trial court's instructions to the petit jury in *Johnson* did not seriously affect the fairness, integrity, or public reputation of judicial proceedings, then neither does a similar defect in the grand jury indictment. *Cotton*, 122 S.Ct. at 1787. This assumes, of course, that the faulty indictment still provided the defendant with adequate notice of the offense charged.

Here, as in *Cotton* and *Johnson*, there is no question that the evidence unequivocally and overwhelmingly supported the missing element, namely, that the apartment building was damaged or destroyed by fire. And, while the element of "by fire or an explosive" was omitted from the grand jury indictment, it was included in the charge to the petit jury, which found the element beyond a reasonable doubt when it returned a guilty verdict. Thus, we can say with confidence that the grand jury, having charged Carr with damaging or destroying the building, would also have charged him with using fire as the means, if the grand jury had been properly advised. In addition, Carr does not suggest that any of the substantive concerns underlying the Fifth Amendment right to a grand jury, such as adequate notice of the offense charged, *see United States v. Miller*, 471 U.S. 130, 134-35 (1985), are implicated here. Indeed, in a trial brief filed a full month before trial, Carr's lawyer stated that "the Government must prove . . . beyond a reasonable doubt . . . [f]irst, that the defendant set fire or used an explosive to damage or destroy, or in an attempt to damage or destroy, property." Carr was thus aware all along that he was charged with damaging or destroying the apartment building "by means of fire or an explosive." In these circumstances, the defect in Carr's indictment did not seriously affect the fairness, integrity, or public reputation of judicial proceedings. Accordingly, we affirm his conviction.

### III.

Carr also appeals his sentence. At sentencing the district court found that Carr was recklessly indifferent to whether people would be in the apartment building. Carr contends that the court erred by equat-

ing his reckless indifference with knowledge and that this error led the court to the erroneous conclusion that it could not depart downward from the offense level (43) specified in the first degree murder guideline. This meant that Carr got a life sentence. We agree with Carr that reckless indifference does not equal knowledge. After reading the sentencing transcript, we are not sure whether the district court was simply equating reckless indifference with knowledge, which would be error, or whether the court concluded that the evidence was also sufficient to support a finding that Carr knowingly caused the death of another. This uncertainty prompts us to vacate Carr's sentence and remand for further proceedings and resentencing.

The basic guideline for a violation of § 844(i) is Guideline § 2K1.4, Arson. However, § 2K1.4(c)(1) instructs that "[i]f death resulted," as it did here, "apply the most analogous guideline from Chapter Two, Part A (Offenses Against the Person)." U.S.S.G. § 2K1.4(c)(1). The most analogous guideline is § 2A1.1, First Degree Murder. *See United States v. Gullett*, 75 F.3d 941, 949 (4th Cir. 1996). Section 2A1.1 set Carr's base offense level at 43. After concluding that no enhancements or downward adjustments applied, the district court sentenced Carr to life imprisonment, the only sentence available for a total offense level of 43.

Carr requested a downward departure based on Guideline § 2A1.1, application note 1, which says: "If the defendant did not cause the death intentionally or knowingly, a downward departure may be warranted. The extent of the departure should be based upon the defendant's state of mind (*e.g.*, recklessness or negligence), [among other things]." U.S.S.G. § 2A.1.1, cmt. n.1. The district court heard extensive testimony at the sentencing hearing about whether Carr knew that the building was an apartment building and whether he knew that it was occupied at the time he set the fire. The court found that it was obvious the structure was an apartment building because (1) there were mailboxes in the front and gas meters on the side for each of the four apartments and (2) there were cars parked next to the building. In addition, Carr had been inside the building, where numbers that had been painted over were still visible on the entrance doors to the apartments. Still, the court did not make a finding that Carr actually *knew* that people were inside the building at the time of the fire. Rather, the court concluded that "the only reasonable belief would be

there were people" present in the apartment building, which "creates a finding of reckless indifference, wilful indifference, which equates to knowledge." This led the court to "find [that it had] no basis to depart downward in this case."

Carr argues that he did not cause the death knowingly (or intentionally) and that the district court committed legal error when it equated reckless indifference with knowledge and, as a result, refused to depart downward. We may review a district court's refusal to depart downward "only when the district court 'was under the mistaken impression that it lacked the authority to depart.'" *United States v. Matthews*, 209 F.3d 338, 352 (4th Cir. 2000) (*quoting United States v. Underwood*, 970 F.2d 1336, 1338 (4th Cir. 1992)). When review of a refusal to depart is appropriate, "issues of guideline construction [are] subject to de novo review." *United States v. Brock*, 211 F.3d 88, 90 (4th Cir. 2000).

Application note 1 to § 2A1.1 draws a distinction between conduct that is either intentional or knowing and conduct that is either reckless or negligent. If the conduct is not done intentionally or knowingly, but instead is done recklessly or negligently, then a downward departure is encouraged. The district court refused to depart because it concluded that Carr's "reckless indifference . . . equates to knowledge." According to Carr, this shows that the district court believed that his reckless indifference in causing the death was the same as knowingly causing it, thus making him ineligible for a downward departure. Carr's argument that the court erred in equating acting recklessly with acting knowingly is, at bottom, an argument that the district court was under the mistaken impression that it lacked the authority to depart under the Guidelines. The court's decision not to depart is therefore reviewable. Specifically, the question whether acting knowingly can be equated with acting recklessly presents a legal question of Guidelines interpretation that is subject to de novo review.

Application note 1 to § 2A1.1, in discussing departure, focuses on the defendant's state of mind: "If the defendant did not cause the death intentionally or knowingly," but caused it through "recklessness or negligence," "a downward departure may be warranted." U.S.S.G. § 2A1.1, cmt. n.1. The term "knowingly" thus indicates a more culpable state of mind than does the term "recklessness." The application

note does not, however, define the two terms, nor are they defined in the general definitions section of the Guidelines, U.S.S.G. § 1B1.1, cmt. n.1. As a result, we must look elsewhere for guidance.

We turn first to finding the appropriate definition for the term "recklessness" in application note 1 to Guideline § 2A1.1 (First Degree Murder), the Guideline that ultimately applies here. This Guideline is in the series of five Guidelines (§§ 2A1.1-2A1.5) relating to homicide. An application note to another Guideline in this series, § 2A1.4 (Involuntary Manslaughter), defines "reckless" as follows:

> "Reckless" refers to a situation in which the defendant was aware of the risk created by his conduct and the risk was of such a nature and degree that to disregard that risk constituted a gross deviation from the standard of care that a reasonable person would exercise in such a situation.

U.S.S.G. § 2A1.4, cmt. n.1. We apply the same definition to the term "recklessness" in application note 1 to Guideline § 2A1.1, and we will explain why we are doing this in light of the cautionary note found in the general application instructions for the Guidelines. "[D]efinitions [in individual Guideline sections] are not designed for general applicability; therefore, their applicability to sections other than those expressly referenced must be determined on a case by case basis." U.S.S.G. § 1B1.1, cmt. n.2. The case for applying the definition of "reckless" in § 2A1.4's application note 1 to "recklessness" in § 2A1.1's application note 1 is easily made. First, the definition of "reckless" in application note 1 to § 2A1.4 requires a sentencing court to focus on the defendant's state of mind in determining whether conduct that resulted in involuntary manslaughter was reckless, which would trigger a higher base offense level than criminal negligence. Likewise, under application note 1 to § 2A1.1 when the "defendant did not cause the death intentionally or knowingly," the "extent of [any downward] departure should be based upon the defendant's state of mind (*e.g.*, recklessness or negligence)," among other factors. Because the recklessness inquiry in both Guideline sections has the same focus, the defendant's state of mind, the definition of "reckless" in application note 1 to § 2A1.4 is tailor-made to define "recklessness" in application note 1 to § 2A1.1. Second, application note 1 to § 2A1.4 uses a standard definition of "reckless." *See, e.g.*, Model

Penal Code § 2.02(2)(c) (1985) (stating that a person acts "recklessly" when he "consciously disregards a substantial and unjustifiable risk . . . of such a nature and degree that . . . its disregard involves a gross deviation from the standard of conduct that a law-abiding person would observe in the actor's situation").

The definition for "knowingly" in application note 1 of Guideline § 2A1.1 can be quickly settled because we have guidance from the Supreme Court. According to the Court, a person acts "knowingly" as to the result of his conduct "when he knows that the result is practically certain to follow from his conduct." *United States v. U.S. Gypsum Co.*, 438 U.S. 442, 445 (1978) (quoting W. Lafave & A. Scott, *Criminal Law* 196 (1972)); *accord* Model Penal Code § 2.02(2)(b)(ii) (stating that a person acts "knowingly" as to the "result of his conduct" when he "is aware that it is practically certain that his conduct will cause such a result").

From the definitions we see that "knowing" and "reckless" states of mind both require a subjective awareness of risk on the part of the actor. The difference lies in the degree of the risk that the actor is aware of. In this case, then, Carr acted knowingly if he acted with the awareness that it was practically certain that death would result from the fire. He acted recklessly if (1) he was aware of the risk of death created by his conduct and (2) the risk was of such a nature and degree that to disregard it constituted a gross deviation from the standard of care that a reasonable person would exercise in the circumstances. In either case Carr acted with a high degree of culpability, and in either case substantial punishment is prescribed. Nevertheless, application note 1 to § 2A1.1 suggests that acts done recklessly may deserve lesser punishment than acts done knowingly. As a result, courts have required that careful attention be paid at sentencing to the defendant's state of mind when § 2A1.1, the murder guideline, is applied to a case involving arson or the use of explosives resulting in death. For example, in *United States v. Prevatte*, 16 F.3d 767 (7th Cir. 1994), the defendants were convicted under § 844(i) for damaging or destroying property by means of explosive that resulted in a death. The defendants detonated a pipe bomb in an alley to test the response time of police and firemen so that future burglaries could be timed accordingly. Unfortunately, an elderly woman standing nearby (just outside her house) was killed by shrapnel from the blast. The district

court used Guideline § 2A1.1 to impose life sentences, noting that the defendants "could have . . . anticipated" that death would "result [from] placing the bomb in the location where it was placed." *Id.* at 773. The Seventh Circuit, however, remanded for resentencing, instructing the district court to consider whether the killing was done intentionally or knowingly or whether it was done recklessly or negligently. The Seventh Circuit explained that "the district court did not undertake . . . analysis of the mental state of each defendant." *Id.* at 784. "Without consideration of this factor," the appeals court could not "accept the district court's sentencing determination." *Id.*    *See also United States v. Paden*, 908 F.2d 1229, 1233 (5th Cir. 1990) (in case of arson that caused the death of a firefighter, noting that the district court departed downward under § 2A1.1 based on its determination that the death was not caused knowingly or intentionally).

In this case the district court made no finding that Carr knew that the apartment building was occupied. Rather, the court found that "the only reasonable belief would be [that] there were people" present in the building. But a finding of what Carr reasonably should have known, as opposed to what he actually did know, does not support the conclusion that Carr knowingly caused the death of another. *See United States v. Bader*, 956 F.2d 708, 710 (7th Cir. 1992) ("Although the sentencing guidelines do not define 'knowingly,' we doubt that the Sentencing Commission equated 'knowing' with 'should have known' or 'could have concluded.'").*

The district court did find that Carr knew that the 730 South Beaumont Avenue structure was an apartment building based on evidence of multiple mailboxes and gas meters outside, visible apartment num-

---

*Of course, a finding that Carr knew that the building was occupied would not necessarily mean that Carr knew that death was practically certain to result from his actions. For example, Carr's level of awareness about how quickly and intensely the fire was likely to burn might also be relevant in determining whether Carr knew that death was practically certain to result from his actions. We express no view on what the evidence indicates with regard to this point. We simply emphasize that our discussion of Carr's knowledge (or lack thereof) that the building was occupied does not mean that this is the only fact relevant to whether Carr knew that death was practically certain to result from his actions.

bers inside, and cars parked next to the building. These facts certainly support a finding of recklessness. Indeed, the district court concluded that these facts "create[ ] a finding of reckless indifference, wilful indifference." These words suggest that the district court found that Carr acted recklessly (with an awareness of a substantial risk that death would result, *see* U.S.S.G. § 2A1.4, cmt. n.1) but not that he acted knowingly (with an awareness that death was "practically certain" to result, *see U.S. Gypsum Co.*, 438 U.S. at 445).

Of course, the district court went on to say that its finding of reckless indifference or wilful indifference "equates to knowledge." It is not clear whether the district court meant that a finding of recklessness is the same thing as a finding of knowledge (which, as we have explained, would be error) or whether it meant that the evidence supported a finding of both recklessness and knowledge (which would be sustainable if the facts were sufficient). We therefore vacate Carr's sentence and remand for resentencing. If the district court finds that Carr acted knowingly, then it may resentence him to life in prison. If the court finds that Carr acted recklessly but not knowingly, then it should consider the downward departure encouraged by application note 1 to § 2A1.1.

IV.

In sum, we affirm Carr's conviction because the indictment's defect, the failure to allege that the building was damaged or destroyed by fire, did not seriously affect the fairness, integrity, or public reputation of the proceedings in this case. We vacate Carr's sentence and remand for the district court to determine whether Carr knowingly caused the death or recklessly caused it. If Carr acted with a reckless (but not knowing) state of mind, then a downward departure may be warranted under application note 1 to Guideline § 2A1.1.

*AFFIRMED IN PART, VACATED*
*IN PART, AND REMANDED*