# UNITED STATES NAVY-MARINE CORPS COURT OF CRIMINAL APPEALS WASHINGTON, D.C.

Before
**F.D. MITCHELL, J.A. FISCHER, D.C. KING**
Appellate Military Judges

**UNITED STATES OF AMERICA**

v.

**MICHAEL I. WOODYE
STAFF SERGEANT (E-6), U.S. MARINE CORPS**

**NMCCA 201400336
GENERAL COURT-MARTIAL**

**Sentence Adjudged:** 22 May 2014.
**Military Judge:** CDR J.A. Maksym, JAGC, USN.
**Convening Authority:** Commanding General, III Marine Expeditionary Force, Okinawa, Japan.
**Staff Judge Advocate's Recommendation:** LtCol K.J. Estes, USMC.
**For Appellant:** Capt David Peters, USMC.
**For Appellee:** LT Amy Freyermuth, JAGC, USN; LT Ann Dingle, JAGC, USN.

**27 August 2015**

---
### OPINION OF THE COURT
---

**THIS OPINION DOES NOT SERVE AS BINDING PRECEDENT, BUT MAY BE CITED AS PERSUASIVE AUTHORITY UNDER NMCCA RULE OF PRACTICE AND PROCEDURE 18.2.**

PER CURIAM:

A general court-martial, consisting of members with enlisted representation, convicted the appellant, contrary to his pleas, of fraternization and non-forcible sodomy in violation of Articles 92 and 125, Uniform Code of Military Justice, 10 U.S.C. §§ 892 and 925. The members sentenced the appellant to be reduced to pay grade E-1 and a bad-conduct

discharge. The convening authority approved the sentenced as adjudged.

The appellant raises one assignment of error: that the military judge abused his discretion when he denied a defense motion to dismiss the non-forcible sodomy conviction for failure to state an offense. After careful consideration of the record of trial and the parties' pleadings, we conclude that the findings and the sentence are correct in law and fact and that no error materially prejudicial to the substantial rights of the appellant was committed. Arts. 59(a) and 66(c), UCMJ.

## Background

In June of 2013, Lance Corporal (LCpl) ML and his wife, BD, reported to Okinawa, Japan where the appellant was assigned as their sponsor. As such, the appellant drove LCpl ML and his wife to on-base appointments and other events designed for new arrivals. On 5 July 2013, after helping the couple run errands, the appellant drove them to the package store where LCpl ML and BD purchased a fifth of vodka and beer. The appellant then drove the couple back to their on-base hotel. When they arrived, the appellant asked if he could stay and socialize with them and the three proceeded to drink in their hotel room.

After the drinking began, LCpl ML stepped outside to smoke a cigarette. BD testified that once her husband left the room, the appellant approached her, pulled her shorts and underwear to the side, and licked her vagina. BD stated that, when LCpl ML returned to the room, she did not inform him of what had happened.

BD testified that later, when LCpl ML went outside for a second cigarette, the appellant returned to where she was sitting, again pulled her shorts and underwear to the side, and licked and digitally penetrated her vagina. BD testified that when her husband returned, she told him that she needed to show him something in the bedroom. She then informed him of what had happened and told him not to say anything about it to the appellant. She testified that they returned to the living area where the appellant was sitting.

At some point thereafter, BD went into the bedroom and got into bed. BD testified that when LCpl ML went outside to smoke another cigarette, the appellant entered the bedroom, removed her shorts and underwear, and proceeded to lick and digitally penetrate her vagina. She testified that the appellant then

2

pulled down his pants, inserted his penis into her vagina momentarily, and then returned to the living room. BD claimed that she had been awake the entire time that the appellant performed these acts, but she did not move or respond. LCpl ML then returned to the hotel room, unaware of what had just happened.

BD testified that when LCpl ML left again to smoke yet another cigarette, she went with him and informed him of what had happened in the bedroom. They returned to the hotel room and did not confront the appellant about the incident. A few hours later, the appellant brought LCpl ML and BD to his residence for pizza with his family and other members of the unit.

Eventually, BD reported her allegations to the authorities, resulting in the appellant being charged with fraternization, rape, sexual assault, aggravated sexual contact, and adultery, in violation of Articles 92, 120, and 134, UCMJ. Two months later, prior to the Article 32, UCMJ, hearing, the Government preferred an additional charge alleging non-forcible sodomy, in violation of Article 125, UCMJ.[1] That specification read as follows: "that "Staff Sergeant Michael I. Woodye, U.S. Marine Corps, while on active duty, did, at or near Okinawa, Japan, on or about 5 July 2013, commit sodomy with Mrs. [BD]."

During a pretrial motion session, the appellant moved to dismiss the non-forcible sodomy (hereinafter "sodomy") specification. While acknowledging that sodomy was an offense under Article 125 at the time the specification was preferred, the appellant argued that sodomy had been repealed by statute at the time of the appellant's trial. Therefore, "[g]iven that the act of consensual sodomy was no longer illegal under the UCMJ, [the sodomy charge] should be dismissed in the interests of justice and fairness."[2] During argument on this motion, the appellant's defense counsel reiterated that "with the new NDAA that just came out, our basis of our motion is that the Article 125 should be dismissed because of pure justice and fairness sir."[3] The Government countered that the repeal of a statute is

---

[1] On 26 December 2013, the President signed into law the National Defense Authorization Act for Fiscal Year 2014, amending Article 125 to cover only forcible sodomy and bestiality.

[2] Appellate Exhibit X at 4.

[3] Record at 80.

not retroactive unless specifically provided for by Congress. The military judge denied the defense motion to dismiss.

At the close of the Government's case, defense counsel moved to dismiss all charges pursuant to RULE FOR COURTS-MARTIAL 917, MANUAL FOR COURTS-MARTIAL, UNITED STATES (2012 ed.). As a result, the military judge dismissed two of the three specifications under Article 120, but declined to dismiss the sodomy charge after the Government argued that "the act of sodomy compiled [sic] with the prejudice to good order and discipline proves the act of sodomy."[4] The appellant was thereafter convicted solely of fraternization and sodomy in violation of Articles 92 and 125, UCMJ.

On appeal, the appellant argues that the military judge abused his discretion when he denied his pretrial motion to dismiss the sodomy specification for failure to state an offense. Further, the appellant argues that, since he "raised this issue" at trial, this court's analysis is limited to "whether the specification's plain language stated a valid offense for non-forcible sodomy under Article 125, UCMJ."[5]

The Government counters that the appellant's objection at trial was "not on grounds of failure to allege the Marcum factors or lack of notice, as Appellant claims now on appeal. . . . Rather . . . [']in the interests of justice and fairness['] dismissal was required because [']consensual sodomy [was] no longer illegal under the UCMJ.[']"[6] Accordingly, the Government claims that the appellant "forfeited review on appeal absent plain error."[7]

In light of the parties positions and the competing standards of review, we must first determine whether the appellant properly preserved the issue at trial.

---

[4] *Id.* at 732. The third specification under Article 120 was withdrawn by the convening authority. *Id.* at 741-42.

[5] Appellant's 23 March 2015 Reply to the Government's Brief at 3 (citing *United States v. Fosler,* 70 M.J. 225, 230 (C.A.A.F. 2011) ("in contested cases, when the charge and specification are first challenged at trial, we read the wording more narrowly and will only adopt interpretations that hew closely to the plain text" (additional citation omitted)).

[6] Government's Brief of 2 March 2015 at 9 (citation omitted).

[7] *Id.* at 10 (citation omitted).

## Discussion

### 1. Was the Issue Properly Preserved?

In its pretrial motion entitled "Motion to Dismiss," the defense set forth the following: that the appellant was accused of committing sodomy; that *Lawrence v. Texas*[8] "invalidat[ed] laws that criminalized certain sexual acts between consenting adults[;]" that *Marcum*[9] established exceptions to the *Lawrence* holding in the military environment, including when sodomy was "contrary to good order and discipline[;]" and that the "113th Congress . . . repealed the offense of consensual sodomy under Article 125[.]"[10] The defense argued that, although the repeal of sodomy as a crime under Article 125 "did not become law until President Obama signed it on 26 December 2013, the intent of Congress to reinstate the constitutional rights given to service members in *Lawrence* began on 3 January 2013 when NDAA FY14 was enacted."[11] Therefore, the defense maintained that the sodomy specification should be dismissed "in the interests of justice and fairness" since "this violation is no longer illegal under the UCMJ."[12]

"A motion shall state the grounds upon which it is made and shall set forth the ruling or relief sought. The substance of a motion, not its form or designation, shall control." R.C.M. 905(a). While the defense motion was designated as a motion to dismiss, the justification for the motion was certainly not failure to state an offense, as the appellant now claims. Nor was this a "fundamental issue" that was "squarely before the military judge[.]" *United States v. Marshall*, 67 M.J. 418, 420 (C.A.A.F. 2009) (issue preserved when the appellant placed the "fundamental issue" before the trial court.). Instead, the motion--and the defense counsel's oral argument on the motion--focused solely on the "fairness" of charging the appellant with sodomy since Article 125 had been modified to decriminalize such conduct. Accordingly, we find the appellant failed to raise at trial the issue for which he now seeks appellate review.

---

[8] 539 U.S. 558 (2003).

[9] *United States v. Marcum*, 60 M.J. 198 (C.A.A.F. 2004)

[10] AE X at 3.

[11] *Id*. at 3-4.

[12] *Id*. at 4.

5

## 2. Plain Error Analysis

Having determined that the appellant has raised this issue for the first time on appeal, we turn now to the appropriate standard for review. When a defective specification is raised for the first time on appeal, the issue is forfeited in the absence of plain error. *United States v. Humphries*, 71 M.J. 209, 213 (C.A.A.F. 2012); *see also United States v. Tunstall*, 72 M.J. 191, 197 (C.A.A.F. 2013) (noting that when an appellant fails to object to specification at trial for its failure to state an offense, an appellate court reviews the claim on appeal for plain error). To establish plain error, the appellant has the burden to demonstrate: (1) there was error; (2) the error was plain or obvious; and (3) the error materially prejudiced a substantial right of the accused. *See United States v. Girouard* 70 M.J. 5, 11 (C.A.A.F. 2011).

We begin our analysis by noting that, in *Marcum*, the Court of Appeals for the Armed Forces (CAAF) rejected a facial challenge to Article 125 in the wake of *Lawrence*. Reasoning that "an understanding of military culture and mission cautions against sweeping constitutional pronouncements that may not account for the nuance of military life[,]" *Marcum*, 60 M.J. at 206, the CAAF adopted a tripartite framework to determine whether Article 125, UCMJ, is constitutional as applied to the facts of a given case: First, was the conduct that the accused was found guilty of committing of a nature to bring it within the liberty interest identified by the Supreme Court? Second, did the conduct encompass any behavior or factors identified by the Supreme Court as outside the analysis in *Lawrence?* "For instance, did the conduct involve minors? Did it involve public conduct or prostitution? Did it involve persons who might be injured or coerced or who are situated in relationships where consent might not easily be refused?" *Id.* at 207 (citation omitted). Finally, are there additional factors relevant solely in the military environment that affect the nature and reach of the *Lawrence* liberty interest? *Id.*

Recently, in *United States v. Bass*, __ M.J. __ (N.M.Ct.Crim.App. 18 Aug 2015), this court held that these "*Marcum* factors" must be pleaded in a specification. We adhere to that precedent today and hold that the specification was defective. Since *Bass* was the law at the time of appeal, we also find the error was plain. *See United States v. Harcrow*, 66 M.J. 154, 159 (C.A.A.F. 2008) (court considers "whether the

6

error is obvious at the time of appeal, not whether it was obvious at the time of the court-martial.")

However, a defective specification is "not subject to automatic dismissal, even though it affects constitutional rights. . . . Rather, this Court tests for prejudice." *United States v. Wilkins*, 71 M.J. 410, 413 (C.A.A.F. 2012) (citations omitted). To determine whether there is prejudice, "we look to the record to determine whether notice of the missing element is somewhere extant in the trial record, or whether the element is 'essentially uncontroverted.'" *Humphries*, 71 M.J. at 215-16 (quoting *United States v. Cotton*, 535 U.S. 625, 633 (2002)). If either is the case, the charging error is considered cured and material prejudice is not demonstrated. *Id.* at 217. In this case, we find several indicators in the record to persuade us that the appellant was not prejudiced by the omitted *Marcum* factor.

First, prior to pretrial motions, the appellant received a copy of a memo from the prosecution to the appellant's commanding officer. In that memo, the Government explained that:

> A consensual sodomy charge is not prohibited post don't ask don't tell and Lawrence so long as there is a military nexus to the charge. Recently in U.S. v. Castellano, the [C.A.A.F.] affirmed consensual sodomy charges are proper where Marcum factors are present. In this case, the act of a Staff Sergeant performing oral sex on the wife of a Lance Corporal in his shop is most definitely prejudicial to good order and discipline and would qualify as a Marcum factor.[13]

Second, in its response to the appellant's motion to dismiss, the Government conveyed its theory of criminality regarding the sodomy specification, arguing that the appellant's conduct amounted to a criminal act because:

> The accused was both a sponsor and a Staff Non Commissioned Officer in the same chain of command as Mrs. B.D.'s husband, and under these circumstances she is a person who might be coerced or might be situated in a relationship where consent might not easily be refused.

---

[13] AE X at 32.

. . . .

> Distinguished from *Marcum* and *Castellano*, where both the accused and the victim were in the armed forces, this case involves the spouse of a member of the armed forces. This is actually another *Marcum* factor because of the well-established Article 134 charge of adultery. In this case where both the Accused and the alleged victim are in the same chain of command and there is such a disparity in their ranks it would meet the criteria of prejudicial to good order and discipline.[14]

Similar comments from the prosecution have been held to ameliorate any prejudice from insufficient notice. *See United States v. Liboro*, 10 F.3d 861, 864 (D.C. Cir. 1993) (finding harmless the district court's failure to provide the required notice under Federal Rule of Criminal Procedure 11 when the appellant "was sufficiently apprised of the charges and comprehended them" as a result of the prosecution's statements during the plea proceeding).

Third, the Government argued at the pretrial Article 39(a) hearing at which the defense motion to dismiss was litigated that:

> What this is an issue of is an actual *Marcum* – a factor outlined in *Marcum*, such as a situation where, specifically, persons who might be coerced or in relationships not – that they could not easily refuse. The situation here is not a matter of taking away a person's consensual liberty rights. The issue here is a sponsor of one of the only people who the victim – alleged victim at the time knew, who was a staff NCO compared to her lance corporal husband, have relations with her. In that context, as outlined in *Marcum* and affirmed in *Castellano*, the military has a reason for still prosecuting this . . . . It goes towards good order and discipline and other military necessities.[15]

Fourth, during its opening statements, the trial counsel stated:

---

[14] AE VII at 2 (internal citation omitted).

[15] Record at 81.

8

The third charge alleges sodomy; and that's for Staff Sergeant Woodye performing oral sex on [BD] under circumstances which were prejudicial to good order and discipline because he was the sponsor—he was the staff NCO of her husband and in the circumstances that it happened where consent could not be easily refused.[16]

Fifth, the Government provided testimony that LCpl ML was reluctant to confront the appellant due to his rank and position in the unit.[17]

Moreover, the trial counsel's closing argument reiterated the Government's position:

> There's another factor that you're allowed to consider. And that's the factor that when there are circumstances which exist which makes it difficult or hard for someone to provide consent . . . situations where consent cannot be easily refused. Staff Sergeant Woodye was the sponsor; [BD] was the sponsoree. She's dependent on Staff Sergeant Woodye. That is a situation where consent cannot be easily refused. That factor also applies in this case.

> And then there's a third factor that you can consider. And in this factor, the evidence is very strong on. That is the factor that says it is a crime when the circumstances implicate a unique military interest, things like prejudice to good order and discipline. In evaluating this factor . . . [y]ou're allowed to consider the fact that Staff Sergeant Woodye was, himself, married; that he is a staff NCO. You get to consider the fact that [BD] was the dependent; she's a dependent. And that Lance Corporal L and [BD] were the sponsorees of Staff Sergeant Woodye . . . [a]nd you can consider that Lance Corporal L found out that the sodomy occurred. Bottom line, the law does not permit a staff NCO in the Marine Corps to perform oral sex on a dependent wife in temporary lodging while the lance corporal from his own unit is out of the room. . . .

---

[16] *Id.* at 510.

[17] *Id.* at 718-19.

The crime of sodomy, just like the crime of adultery, is prejudicial to good order and discipline for a lot of the same reasons.[18]

The Government explained that "[w]hat makes [sodomy] a crime is the presence of other factors; factors such as prejudice to good order and discipline."[19] The Government referred to the fact that the appellant engaged in sexual acts with "the wife of his own lance corporal from his own platoon, the wife of [a] lance corporal that he is supposed to sponsor on the island; [a lance corporal] he[is] supposed to be taking care of . . ." and that the crime of sodomy is "prejudicial to good order and discipline."[20]

The trial counsel also presented a third *Marcum* factor which he argued could be used to establish that the sodomy was unlawful:

Is it possible that someone else could of witnessed this? And what the law says here is that, "Performing oral sex in public would be a crime." The UCMJ says that, "Performing oral sex under circumstances where there is a substantial risk that the acts could be witnessed by someone else, even if they are not discovered, makes that a crime." And that factor is satisfied here. It's proven beyond a reasonable doubt because the sex occurred at the Shogun Inn in the living room and the bedroom while Lance Corporal [L] was out of the room. There was a substantial risk – he was only gone for 6 to 8 minutes – that he was going to come back in and see what happened. And you heard in the stipulation of testimony that he did, in fact, come back, and he did see something fishy. He saw his staff NCO getting up from the crotch area of his wife. That factor is satisfied.[21]

Although raised for the first time in the Government's closing argument, we nonetheless conclude that notice of this *Marcum* factor was also "extant" in the record of trial. The

[18] *Id*. at 763-64.

[19] *Id*. at 762.

[20] *Id*. at 761.

[21] *Id.* at 762-63.

Government offered essentially uncontroverted evidence of the "substantial risk that the acts could be witnessed by someone else."[22] Specifically, both LCpl ML and BD testified that LCpl ML was outside the room and could have walked into the hotel room at any time. Moreover, the diagrams and pictures of the hotel room demonstrate that the entrance to the room had a direct line of sight to the living room and the couch, where the sodomy took place.

That the defense clearly understood that the Government would be required to satisfy *Marcum* is also well-demonstrated in the record. In his motion to dismiss, the appellant acknowledged that acts of sodomy could only be criminal if the Government could demonstrate a *Marcum* factor,[23] noting further that, under *Marcum*, "consensual sodomy was punishable if it was contrary to good order and discipline."[24] *See United States v. Carr*, 303 F.3d 539, 544 (4th Cir. 2002) (finding pretrial brief filed by defense counsel clearly showed notice of element missing from indictment). Additionally, in his motion for a finding of not guilty under R.C.M. 917, the appellant unsuccessfully argued that the Government failed to present any witnesses or evidence that demonstrated that the sodomy committed was prejudicial to good order and discipline.[25]

Moreover, during cross-examination of BD, the defense counsel attempted to establish that BD stayed in the hotel with the appellant throughout the appellant's advances, that her husband was accessible to her during the time frame in question, that she went out with the appellant immediately after the sodomy, and that she continued to accept rides from him in the following days—all in a seeming effort to, at least in part, dispute the allegation that "consent could not be easily refused." Finally, in closing arguments, the defense counsel argued that the Government had failed to offer sufficient

---

[22] The military judge properly instructed the members that one of the Marcum factors was "public behavior," and that such behavior includes an act that "occurs under circumstances in which there's a substantial risk that the acts would be witnessed by someone else, despite the fact that no such discovery occurs." Record at 781-82.

[23] AE X at 3.

[24] *Id.*

[25] Record at 721.

evidence that the sodomy was prejudicial to good order and discipline.[26]

## Conclusion

Considering these factors in toto, we are convinced that the record sufficiently establishes that the appellant was not prejudiced by the specification's omission of any *Marcum* factors.  The findings and the sentence as approved by the convening authority are affirmed.

For the Court

R.H. TROIDL
Clerk of Court

---

[26] While we recognize the language contained in *Humphries,* 71 M.J. at 217 that the appellant's assertions during closing argument challenging the omitted element were insufficient to persuade that court that the appellant was not prejudiced by the omitted element, we find such a factor relevant here, especially in light of the other evidence of notice previously discussed. *See Tunstall,* 72 M.J. at 197 n.8.